This appeal is prosecuted to reverse a judgment of the district court of Grady county, refusing to admit an instrument purporting to be the last will and testament of Annie Stover, deceased, to probate.
O.R. McKinney petitioned the county court of Grady county to have an instrument bearing date of March 13, 1920, admitted to probate as the last will and testament of Annie Stover, deceased. By the terms of this instrument all of the property of the said Annie Stover was devised and bequeathed. share and share alike, to six of the eight children of the deceased, it being recited that *Page 252 
two of the children had already received their full share of the estate.
The said O.R. McKinney was nominated as executor of said will.
Upon hearing in the county court of Grady county, judgment was entered admitting the will to probate. An appeal was perfected to the district court of Grady county where, after hearing the trial de novo, upon transcript of evidence and proceedings had in the county court, judgment was rendered refusing to admit the instrument to probate, to reverse which, O.R. McKinney has instituted proceedings of error in this court.
Maggie Smith, a daughter of the deceased, appeared in the county court and in the district court of Grady county and contestted the probate of the instrument propounded as the last will and testament of Annie Stover, deceased, upon the ground that the same had not been executed, published, and attested as required by the laws of the state of Oklahoma.
The only proposition relied upon and discussed in the brief of the plaintiff in error is that the trial court erred in failing to find that the will had been executed in substantial compliance with the laws of this state.
The evidence in the record discloses that the will in question was prepared by E.L. Kirtley, in his office in the town of Marlow, that one of the subscribing witnesses to the will, J. Ad Wylie, shared the office with the draftsman of the will, Mr. Kirtley, and kept a desk there, Wylie's desk being stationed some 12 feet from Kirtley's desk. That on the occasion of the execution of the will in controversy, Mr. Wylie came into the office and found the testatrix and Mr. Kirtley together, near Mr. Kirtley's desk, that after engaging the testatrix in conversation for a moment he retired to the rear of the office, which is some 25 feet from Kirtley's desk, and there engaged the other subscribing witness, W.W. House, in conversation, Mr. House being already in the office. That, thereupon, the testatrix and Mr. Kirtley engaged in conversation, the nature of which neither Mr. Wylie nor Mr. House heard, or remembered, that soon afterwards Mr. Kirtley walked to where Wylie and House were in conversation, in the rear of the office, and requested both of them to sign as witnesses to the signature of the testatrix which had already been placed upon an instrument of writing, prepared by Kirtley at the request of the testatrix, that this request was made in the presence and hearing of the testatrix, and that both Wylie and House thereupon affixed their signatures to the instrument as witnesses.
Neither Wylie nor House would state whether or not the instrument was read over to the testatrix or read by her in their presence, nor did the testatrix declare or acknowledge the instrument to be her will at the time they affixed their names thereto, as witnesses, that neither of the subscribing witnesses saw the testatrix affix her signature to the instrument, nor did she acknowledge to them that the signature appearing on the instrument was her signature.
The great weight of the evidence is to the effect that neither of the subscribing witnesses knew that the instrument they were signing was a will, and that the will was not signed or acknowledged in the presence of the subscribing witnesses, nor any declaration made by the testatrix to the attesting witnesses that the instrument was her will at the time it was signed by her. Section 11231, Comp. Stat. 1921, provides:
"Formal Requisites: Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:
"First: It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.
"Second: The subscription must be made in the presence of the attesting witnesses or be acknowledged by the testator to them, to have been made by him or by his authority.
"Third: The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will, and,
"Fourth: There must be two attesting witnesses each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence."
The testimony in the case at bar establishes to our satisfaction a failure to substantially comply with the requirements of subdivisions two and three of the statute quoted.
Something more is required in establishing the execution of a will than is required to prove the execution of some other instrument of less formality than a will. We do not mean to be understood as holding that there must be a literal compliance with the statute as to the execution and publication of a will before the will shall be admitted to probate. We think it may be said to be fairly established by the authorities that proof of due execution, publication, and attestation *Page 253 
may be implied from the conduct of the testatrix, and that an express declaration by the testator to the subscribing witnesses that the instrument is his will is not necessary.
In the instant case, if there had been any testimony that the subscribing witnesses had heard the will read over to the testatrix and had seen the testatrix thereupon sign her name to the will, although the testatrix may not have spoken or expressly declared the instrument to be her will, there might have existed such proof of compliance with the statute as would entitle the will to probate. But in this case it has not been shown that the subscribing witnesses say the testatrix sign the will or heard her declare either by action, conduct, or words that the instrument was her will.
We would not be disposed to quibble about the method of publication adopted by the testatrix if the evidence tended to show the adoption of any method of publication whatever, however informal it might have been.
In this state, our court, in the case of McCarty et al. v. Weatherly et al., 85 Okla. 124, 204 P. 632, has laid down the rule as follows, in the sixth paragraph of the syllabus:
"Where a nonholographic will is offered for Probate and the evidence fails to show that the testatrix declared or published the instrument as her will in the presence of the subscribing witnesses, the proponents have not established that the will was executed according to law, and the probate thereof should be denied."
In the fifth paragraph of the syllabus in the same case it is said:
"The declaration of the testatrix to the attesting witnesses that the instrument is her will is an essential part of the execution of a nonholographic will."
The reason for the rule is, we think, correctly stated in 28 Ruling Case Law, page 108, paragraph 60, in the following language:
"The formalities to be observed in the execution of wills are simple and calculated to prevent frauds and uncertainty in the testamentary dispositions of property, and where a Legislature has seen fit to impose certain requirements looking to the execution of a will, compliance with such requirements is necessary to the validity of any instrument offered as a testament. No essential formality may be dispensed with and a failure to comply with formalities prescribed for the prevention of fraud is not excused by showing that in the particular case under consideration there was no fraud. The power of transmitting property by will is a power to be exercised solely under the statute law, and only by compliance with the requirements of the statute may an heir be deprived of his inheritance. It is the intention of the Legislature which controls, not that of the testator, and a will which in its execution does not conform to the provisions of the statute will be denied probate, notwithstanding the intention of the testator. It is immaterial that the requirements of the law in their application in particular cases may defeat the actual intention of a person as to the disposition of this property."
And again, in the case of Hill v. Davis, 64 Okla. 256,167 P. 468, our court said:
"The right to dispose of property by will is a creature of the statute. The Legislature has the power, in granting the right, to determine and prescribe the form and manner in which it shall be exercised. In requiring that the testator shall declare to two attesting witnesses that the instrument not in his handwriting is his will, the Legislature no doubt intended it as a safeguard against imposition and fraud. The provisions of the statute quoted are mandatory, and there must be substantial compliance therewith. To hold that requirement was complied with in this instance, it seems us, would subvert the purpose and intent of the statute, and would amount to a disregard of its substance."
The burden of proof rested upon the proponent of the will in controversy to establish by a preponderance of the evidence that the same was executed and published according to the provisions of the statute. See McCarty et al. v. Weatherly et al., supra.
It is urged in the argument that in this case there is no intimation of fraud, and that to adopt a too literal interpretation of the statute would defeat the intent of the testatrix in the disposition of her estate. To this it may be replied as pointed out in the text from Ruling Case Law, hereinbefore quoted, that the statute was enacted primarily to prevent fraud.
To accomplish this purpose certain formalities are thrown around the execution of a nonholographic will, which formalities, if dispensed with, would undoubtedly open the door to fraud and enable designing persons to secure rights in the property of deceased persons not granted under the laws of descent and distribution.
If hardship sometimes results in individual cases it must not be permitted to weigh against the interests of that larger group of innocent victims who might be exposed to the cupidity of designing persons if strict compliance with the provisions of the statutes should not be regarded as necessary to the validity of the will. *Page 254 
From examination of the entire record we are of the opinion that the judgment of the trial court is correct, and should be and is hereby affirmed.
By the Court: It is so ordered.