In the Matter of the ESTATE of Rosa M.
HERING, Deceased.

No. 40798.

Supreme Court of Oklahoma.

April 4, 1967.

Church & Northcutt, Tulsa, for plaintiff in error, Richard I. Mertz.

Houston, Klein & Davidson, by Gerald B. Klein, Tulsa, for defendant in error, Garland Keeling, Executor.

Gable, Gotwals, Hays, Rubin & Fox, by G. Ellis Gable, Tulsa, for Heirs of James C. Hering, Deceased.

IRWIN, Vice Chief Justice.

In 1948, James C. Hering and Rosa M. Hering, husband and wife, executed their mutual and conjoint will and a contract pertaining thereto. The contract contained a proviso that their properties, both real, personal and mixed, were jointly owned with rights of survivorship; and the conjoint will, in effect, provided that if Mr. Hering died first, any property remaining upon the death of Mrs. Hering should be considered as their joint property and should be distributed, to certain named heirs of Mr. Hering and certain named heirs of Mrs. Hering, in the manner and proportion set forth in the conjoint will.

Mr. Hering died in 1950, without issue; and his surviving heirs were his wife, Rosa M. Hering, and various nephews and nieces. Shortly thereafter Mrs. Hering commenced proceedings to judicially determine the death of Mr. Hering and to terminate the joint tenancy in the property, held by her and Mr. Hering as joint tenants with the right of survivorship. These proceedings were completed and Mrs. Hering was adjudged to be the sole owner of the property previously held by her and her husband as joint tenants. The validity of that judgment is not challenged.

In September, 1954, Mrs. Hering executed a codicil to her will and bequeathed to her brother, Richard I. Mertz, that portion of her estate that had been previously bequeathed to her sister who died after the execution of the conjoint will. This bequest was in addition to the ⅝ths of Mrs. Hering's estate Mertz received under the conjoint will.

Mrs. Hering died in 1963 and left as her heirs, Richard I. Mertz and a niece. Mertz filed a petition for letters of administration. Two days later, Garland Keeling, the executor named in the conjoint will, filed a petition to probate the will and codicil of Mrs. Hering. Mertz filed a contest but the county court admitted the will and codicil to probate. On appeal to the district court the order of the county court was affirmed. Mertz perfected this appeal from the order overruling his motion for a new trial.

## PROPOSITION I

Richard I. Mertz, herein referred to as contestant, contends the purported contract and conjoint will of Rosa M. Hering were not executed in substantial compliance with the law and should not be admitted to probate; and the evidence was not sufficient to prove the purported codicil was executed in substantial compliance with the law, and, even if valid, could not revitalize the void contract and purported will.

In support of the above contentions, contestant argues that Mrs. Hering did not declare to the attesting witnesses that the instrument was her will and that such witnesses did not sign the will at her request as provided by Title 84 O.S.1961, § 55, and in particular paragraphs 3 and 4 thereof, which provide:

"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

"4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence."

It should be noted there is no contention nor evidence pertaining to fraud, coercion, duress or undue influence concerning the execution of either the contract and conjoint will or codicil; nor is there any contention or evidence that Mrs. Hering lacked testamentary capacity at any time.

All the witnesses to the conjoint will and codicil testified. Basically the difficulty and arguments are a result of the witnesses being unable to completely and clearly recall from their independent recollection, the various incidents surrounding the execution of these instruments. It should also be noted that the execution of the conjoint will occurred about 15 years before the trial and the execution of the codicil occurred about 9 years prior thereto.

The three witnesses to the will were long time friends of Mr. Hering and they were also acquainted with Mrs. Hering. They were employed by the Federal Government and worked with Mr. Hering in the Internal Revenue Department. One of the witnesses, Mr. M, a supervisor in charge of the office where the will was executed, stated he had no independent recollection of the circumstances surrounding the execution of the will. When asked what would be a prerequisite to his signing the attestation clause, he said that he was satisfied Mr. and Mrs. Hering and the other witnesses were all present and they told him what the instrument was and that they were signing it of their own free will and accord, otherwise he would not have signed as a witness. After having the attestation clause read to him, he testified that he would not have signed it if those things mentioned therein had not transpired.

Mr. H, also a witness to the will, testified that Mr. M called the witnesses into his office and they visited with Mr. and Mrs. Hering for a short time; Mr. M informed them that Mr. and Mrs. Hering would like for them to be witnesses to the will; that he remembered Mr. Hering engaging in general conversation and passing the time of day; that he saw both Mr. and Mrs. Hering execute the will as well as the other witnesses; that Mr. Hering stated the instrument was their will and they were signing it and wanted them to witness it; and that when Mr. M called them into his office Mr. Hering said they were preparing their will, that they were going to sign it and they wanted them to witness it.

Another witness to the will, Mr. D, testified that both Mr. and Mrs. Hering asked them to witness their will, and he witnessed both of them sign it as well as all the other witnesses; that he did not remember the exact language but he recalled Mrs. Hering stating it was her will or their will and he recalled her asking them to sign it as witnesses.

The codicil was drawn by an attorney, executed in his office and witnessed by two other attorneys. One witness, Mr. R, testified that Mrs. Hering asked him to witness her signature to the codicil, he saw her and the other witnesses sign it; and before she signed it she told the witnesses that it was her codicil and she wanted them to witness her signature. The other witness to the codicil, Mr. M, testified that at the request of Mrs. Hering he witnessed her signature as well as the other witness; that she requested them to witness it and they saw her sign it. This witness stated that being a lawyer and knowing the duties and responsibilities in the execution of a will or codicil, he would not have signed the instrument as a witness if the facts contained in the attestation clause were not true. Neither of the above witnesses had a clear, independent recollection of the specific events that transpired when this codicil was executed.

In Howard v. Smith's Estate, Okl., 344 P.2d 260, we stated in the first syllabus as follows:

"Substantial compliance with 84 O.S. 1951, § 55, subds. 3, 4, relating to the publication of a will and attesting by witnesses is all that is required, and no formal request that witnesses sign or express declaration that instrument is testator's will is required, but it is sufficient if the testator, by words or conduct, conveys to the witnesses that the instrument is his will and that he desires them to witness it."

In Goff v. Knight, 201 Okl. 411, 206 P.2d 992, we cited language now appearing at 95 C.J.S. Wills § 384(b), which is as follows:

" * * * Where, however, in proceedings for the probate of an instrument as a will, it appears to have been duly executed as such, and the attestation is established by proof of the handwriting of the witnesses or otherwise, although their testimony is not available, or *they do not remember the transaction,* it will be presumed, in the absence of evidence to

the contrary, that the will was executed in compliance with all the requirements of law, including those relating to publication, attestation in the presence of the testator, acknowledgment, the affixing of the testator's signature prior to those of the witnesses, and the performance by the witnesses of their duty to see that the instrument was signed and to satisfy themselves of the testator's competency. This is especially true where the will contains a formal attestation clause, for such clause raises the presumption that the will was duly executed in accordance with the facts stated therein; * * *." (Emphasis added.)

■ The contest of a will is a matter of equitable cognizance and the trial court's findings and judgment therein will not be reversed on appeal, unless clearly against the weight of the evidence. Howard v. Smith's Estate, supra; In re Adam's Estate, 149 Okl. 90, 299 P. 226, and In re Sawyer's Estate, 202 Okl. 21, 209 P.2d 864.

■ The county court and the district court on appeal found and determined that the will and codicil were executed in such a manner as to comply with the applicable law. In our opinion, the district court's judgment determining that the same were executed in compliance with the applicable law is not clearly against the weight of the evidence and we so hold. Having made such determination, it is unnecessary to consider or determine whether a properly executed codicil does or does not revitalize a prior defective will.

### PROPOSITIONS II & III

Contestant contends in proposition II that the purported contract and conjoint will bequeathing only a life estate to Mrs. Hering is against public policy and void for the reason the same is contrary to the Oklahoma "Forced Heir" Statute.

To sustain this proposition contestant argues that the contract and conjoint will limits the inheritance of Mrs. Hering to a life estate; that under Title 84 O.S. 1961, § 44, one spouse cannot devise to the other spouse a lesser sum than what the latter spouse could take under the laws of succession; that Mr. Hering left surviving him his spouse, Mrs. Hering, no issue either natural or adopted, no father, mother, brother or sister, only nieces and nephews, and under the provisions of Title 84 O.S.1961, § 213(5), Mrs. Hering was entitled to all the estate.

In proposition III contestant contends that the proponents of Mrs. Hering's will and codicil are estopped by the judgment rendered in the judicial determination of death and termination of joint tenancy proceedings wherein it was judicially determined that Mrs. Hering was the sole owner of all the property previously held by her and her husband as joint tenants with right of survivorship.

The theories advanced by contestant to support proposition II and III seem to be somewhat inconsistent with reference to the manner in which Mrs. Hering acquired ownership of all the property. In proposition II contestant argues that Mrs. Hering acquired all the property previously owned by Mr. Hering under the laws of succession because the will of Mr. Hering was void, and in proposition III he argues that by virtue of the termination of joint tenancy proceedings, it was judicially determined that Mrs. Hering acquired such property by being the surviving joint tenant.

In our opinion it is unnecessary to consider or determine whether the will of Mr. Hering was void and Mrs. Hering acquired all the property under the laws of succession, or whether Mrs. Hering acquired all the property by virtue of being the surviving joint tenant, for the reason we will assume, arguendo, that at the time of Mrs. Hering's death she was the sole owner of all the property. Having made such assumption, how Mrs. Hering acquired the property becomes immaterial.

In proposition I, we determined that Mrs. Hering's will and codicil were executed according to law. Therefore, unless Mrs. Hering revoked such will and codicil, the

same were valid and subject to probate. Contestant does not contend that Mrs. Hering did revoke such will and codicil but argues that she was unaware that she could make disposition of her property contrary to the contract and conjoint will executed by her and her husband.

As heretofore stated, shortly after the death of Mr. Hering, Mrs. Hering commenced proceedings to judicially determine the death of Mr. Hering and to terminate the joint tenancy in the property held by her and Mr. Hering as joint tenants with right of survivorship. A judgment was rendered in said cause which granted her the relief sought. Approximately 6 years and 5 months after the execution of the joint will, under which contestant received ⅔ths of Mrs. Hering's estate and approximately 4 years after the death of her husband, Mrs. Hering executed an instrument designated as "Codicil to Last Will and Testament of Rosa M. Hering." In the codicil she bequeathed to contestant that portion of her estate that had been previously bequeathed to her sister who subsequently died, and also directed certain sums be paid to contestant. In the codicil, Mrs. Hering specifically stated that she ratified and confirmed the "said Mutual and Conjoint Will in all other respects."

There is nothing in the record indicating that Mrs. Hering ever attempted or wanted to make disposition of her property in any manner that would be inconsistent with the plan of distribution agreed upon by her and her husband. By her own will and codicil, Mrs. Hering bequeathed one-half of her estate to her heirs. None of her heirs occupied the position of a "forced heir." Whether Mrs. Hering could have made disposition of her property in a manner inconsistent with the terms of the contract and mutual will is not presented or determined for the simple reason she did not do so

For the foregoing reasons we can only conclude that the trial court was correct in admitting to probate the will and codicil of Mrs. Hering.

Judgment affirmed.

JACKSON, C. J., and DAVISON, WILLIAMS, HODGES, LAVENDER and McINERNEY, JJ., concur.